## THE JASON.

(Circuit Court of Appeals, Second Circuit. January 11, 1910. Questions Certified March 1, 1910.)

### Nos. 51–52.

1. Shipping (§ 200*)—Suit for General Average Contribution—Negligent Stranding of Vessel.

A finding of the District Court in a suit by a shipowner to recover a general average contribution from a cargo owner on account of salvage expenses made necessary by the stranding of the vessel that the stranding was due to negligent navigation affirmed.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 200.*

General average, see notes to Pacific Mail S. S. Co. v. New York, H. & R. Min. Co., 20 C. C. A. 357; The Santa Ana, 84 C. C. A. 316.]

2. Shipping (§ 195*)—General Average—Right of Vessel to Contribution from Cargo—Negligent Stranding.

Section 3 of the Harter act (Act Feb. 13, 1893, c. 105, 27 Stat. 445 [U. S. Comp. St. 1901, p. 2946]), which exempts the owner of a vessel who has exercised due diligence to make said vessel in all respects seaworthy and properly manned, equipped, and supplied from liability for injury to cargo resulting, inter alia, from faults or errors in navigation, is not to be construed so broadly as to entitle a vessel owner to collect a general average contribution from the cargo owners on account of expenditures incurred for the salvage of vessel and cargo after stranding through faults and negligence in navigation, and a provision in the bills of lading giving it such right is invalid.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 618; Dec. Dig. § 195.*]

3. Shipping (§ 189*)—Relation of Vessel to Cargo—General Average—Construction of Harter Act.

In view of the provisions of the Harter act (Act Feb. 13, 1893, c. 105, § 3, 27 Stat. 445 [U. S. Comp. St. 1901, p. 2946]), where the owner of a vessel has conformed to such provisions by exercising due diligence to make his vessel seaworthy and properly manned, equipped, and supplied, although she was stranded through a fault in navigation, he is entitled to have expenditures made by him for salvage of the vessel and cargo taken into a general average adjustment in a suit brought by cargo owners to enforce a general average contribution from the vessel on account of cargo jettisoned for his protection against liability, although not entitled to an affirmative decree for the recovery of any balance due him on such adjustment.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 601; Dec. Dig. § 189.*]

4. Shipping (§ 194*)—General Average—Expenses Subject of Compensation—Salvage Expense.

The owner of a vessel stranded while on a voyage to New York with cargo contracted with a wrecking company to salve the vessel, and agreed on the compensation to be paid on account of the hull, but not on account of the cargo. The wrecking company released the vessel, and conveyed her to New York, where the cargo owners made an independent settlement with the salvors. *Held*, that the salvage service continued until vessel and cargo reached New York, and was for the common benefit of both, and that, under the American law, the expense thereof by whoever paid should be brought into a general average adjustment.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 616; Dec. Dig. § 194.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeals from the District Court of the United States for the Southern District of New York.

Cross-actions in admiralty between the Actieselskabet Jason, as owner of the steamship Jason, and John Arbuckle and others. From the decrees, both parties appeal. Affirmed.

These are cross-actions between the owner of the Norwegian steamship Jason and the firm of Arbuckle Bros., owners, and the Insurance Company of North America, insurers of part of the cargo of said vessel, to recover general average contributions. The owner of the vessel claims a balance of $5,060.24 and interest. Arbuckle Bros. and their insurers claim a balance of $3,506.50 with interest. The District Court dismissed both libels and both sides have appealed. The opinion of Judge Hough is reported in 162 Fed. 56.

Wing, Putnam & Burlingham (J. Parker Kirlin, of counsel), for the Jason.

Kneeland & Harison (Lawrence Kneeland, of counsel), for Arbuckle and others.

Before LACOMBE, COXE and WARD, Circuit Judges.

LACOMBE, Circuit Judge. Early in the afternoon of July 29, 1904, the Jason left Cienfuegos for New York laden with about 12,000 bags of sugar and some general cargo. Shortly before 4 a. m. of July 30th she stranded on Sambo Cambeso or Sambo Head, a low lying rock about seven miles northwest of Dry Shingle Reef. Shortly after the stranding, a passing steamer took the first officer back to Cienfuegos, whence her condition was cabled to New York. An agreement was there made between shipowner's agent and the Merritt & Chapman Wrecking Company that one of their tugs then lying at Kingston, Jamaica, should go forthwith to investigate the Jason's situation and report for an agreed price of $1,000. Upon her report, the shipowner's agent, being unable to communicate speedily with the cargo owners, agreed on behalf of the hull that the wrecking company should salve the Jason for 40 per cent. of the salved value. No agreement was made with respect to the cargo. While the steamer lay on the reef about a sixth of her cargo was jettisoned. She was got afloat subsequently by the wrecking company and conveyed to New York, where cargo owners made an independent settlement with the salvors for approximately 25 per cent. of salved value.

The original libel is brought by the hull owners, alleging that the stranding was without negligence or fault on the part of the Jason, that all salvage expenses are to be considered as incurred for the common benefit in one continuous salving operation, and demanding upon an adjustment of accounts that Arbuckle Bros., as owners of the major portion of the salved sugar, pay in general average the balance above stated.

The cross-libel alleges that the stranding and consequent damages were solely caused by the incompetency of the Jason's master, the defective condition of her compasses, and faulty and negligent navigation. It further asserts that salvage expenses are not the subject of adjustment in general average, and, by excluding the payments and losses of the shipowners by reason of the stranding and also all salvage payments, it makes out a general average contribution arising prin-

cipally from jettisoned sugar due to Arbuckle Bros. in the amount of
$3,482.72. The above summary is condensed from the opinion of the
district judge which elaborately discusses the facts and the law of the
case. To avoid repetition, we shall confine this opinion to a brief state-
ment of our own conclusions and the reasoning or authority on which
we rest them.

The district judge held that there was no evidence justifying the
belief that the master was incompetent, or that the disaster was caused
by any defective condition of the compass. We concur in this conclu-
sion, and do not find that it is criticised in the brief. He further held
that the stranding was due to faulty and negligent navigation. Making
due allowance for the provision in the bill of lading (paragraph 2) that
the carrier shall not be liable for any loss or damage occasioned by
stranding and for the effect of such provision in placing the burden of
proof (The Victory and The Plymothian, 168 U. S. 423, 18 Sup.
Ct. 149, 42 L. Ed. 519), we concur also in this conclusion. Upon the
record it cannot be held that there are two different rocks some miles
apart known, respectively, as Sambo Head and Sambo Cambeso. The
confusion has probably arisen because the captain did not quite under-
stand the answer made to him by the native boatman of whom he asked
his whereabouts and has inserted an "m" in the name he heard. The
Spanish word for "head" is "cabeza," and "cabezo" means the "summit
of a hill." In that language Sambo Head would be "Sambo cabeza"
or "Sambo cabezo." The location of Sambo Head must be taken to be
that indicated on the later chart, and, since the Jason stranded on it
when coming from the eastward, she must, as Judge Hough found,
have proceeded for more than an hour among shoals and rocks which
must have presented warnings that would have been observed by a
proper lookout. Having found that the stranding was caused by the
negligence of the ship, the district court dismissed the original libel
under The Irrawaddy, 171 U. S. 187, 18 Sup. Ct. 831, 43 L. Ed. 130.

The bill of lading in the case at bar contains a clause closely fol-
lowing the language of the third section of the Harter act (Act Feb.
13, 1893, c. 105, 27 Stat. 445 [U. S. Comp. St. 1901, p. 2946]), and
reading as follows:

"If the owner of the ship shall have exercised due diligence to make said
ship in all respects seaworthy and properly manned, equipped and supplied,
it is hereby agreed that in case of danger, damage, or disaster resulting from
fault or negligence of the pilot, master or crew, in the navigation or manage-
ment of the ship, or from latent or other defects, or unseaworthiness of the
ship, whether existing at time of shipment, or at the beginning of the voyage,
but not discoverable by due diligence, the consignees or owners of the cargo
shall not be exempted from liability for contribution in general average, or
for any special charges incurred, but with the shipowner shall contribute in
general average, and shall pay such special charges, as if such danger, dam-
age or disaster had not resulted from such fault, negligence, latent, or other
defect or unseaworthiness."

There was no such clause in the case of the Irrawaddy.

Attention is called to this difference and also to decisions of the
English courts later than those which were commented on in the Irra-
waddy. If the question were a new one, or if the language used by the
majority of the Supreme Court were less positive and far-reaching,

we might be disposed to reach the conclusion so forcibly contended for in argument that, since an agreement to share the expense of saving the joint adventure might be entered into by all parties after they learned of the stranding, public policy would not prevent their voluntarily entering into a similar one in advance, when such agreement contains, as this one does, a provision that the shipowner shall use due diligence to have the ship seaworthy and properly manned, outfitted, and supplied. But the majority decision in the Irrawaddy indicates quite clearly a construction of the Harter act by the Supreme Court, which will confine the provisions of the third section narrowly to the relief of a shipowner from claims made against him, and will not allow him to become himself the claimant when faulty navigation has caused the mishap. The dismissal of the original libel is therefore affirmed.

Coming now to the cross-libel, it is not disputed that the owner of jettisoned cargo is entitled to general average adjustment to secure such reimbursement as he may obtain from other interests. The question is whether when he institutes such an adjustment the shipowner, when stranding resulted from a fault of navigation, may bring in his losses by way of sacrifices of ship's equipment and expenditures for the common benefit, when he has conformed to the provisions of the third section of the Harter act. The district judge considered that he was bound by the former decision of this court in The Strathdon, 101 Fed. 603, 41 C. C. A. 515, and allowed the sacrifices and expenses of the shipowner to an extent sufficient to defeat any claim against him but not so as to give him an affirmative claim for any balance of adjustment against the cargo owner, and, the balance being against the cross-libelant, dismissed the cross-libel. What was said in our decision in the Strathdon fully warranted such a disposition of this case.

In the Strathdon the district judge held that the loss was occasioned by negligence in the management of the vessel. The action was brought by cargo owner to enforce general average contribution from the ship; the balance being against her. Judge Thomas in a carefully reasoned opinion pointed out that, if the cargo owner were allowed to obtain indirectly through a general average adjustment losses which he could not recover directly, the Harter act would be judicially repealed. We found his reasoning convincing and approved this conclusion. Inasmuch as we also found that the fire was not caused by any fault in management of the ship, the expression of that approval was academic. We are still, however, of the same opinion, namely, that to allow the cargo owner in such cases to obtain by indirection what the statute expressly says he should not obtain would be as much "in the nature of a legislative act," as was the construction contended for and disallowed by the majority of the Supreme Court in the Irrawaddy. But, on more mature consideration, we are further satisfied that the more logical way to accomplish a result conformable to the statute is to hold that the cargo owner may not bring the shipowner, as a contributing interest, into a general average adjustment which may result in a claim which the Harter act disallows. This seems to be in accord with the decision in the Irrawaddy which holds that the shipowner who has conformed to that act may not bring the cargo owner into an adjustment which may result in a claim against the latter.

178 F.—27

This disposition of the case would render it unnecessary to decide the question as to salvage payment, but both sides have very fully argued it and apparently it is a question which may not infrequently arise. It will probably save others from expensive litigation if we express our opinion on that branch of the case. It appears from the record that if the salvage payments made by the owners of the Jason and Arbuckle Bros., respectively, be regarded as expenditures for common benefit and allowable in general average, the adjustment will result in a balance in favor of the Jason. The bill of lading provides:

"General average payable according to York-Antwerp Rules and as to matters not therein provided for according to usages of the port of New York."

On this branch of the case we are fully in accord with the reasoning of Judge Hough and with his conclusions that "until the Jason arrived under convoy at New York with her salved cargo on board there went on a continuous service of the kind ordinarily called salvage and such successful service benefited both hull and cargo"—and that "this salvage expense, however or whenever liquidated, was something done for common benefit and therefore should under American law be brought into the general average adjustment."

The decrees in both suits are affirmed, and, since both sides appealed and neither has secured any modification of the decree it sought to review, this affirmance is without costs.

Subsequent to the filing of the foregoing opinion the court decided to certify certain questions of law to the Supreme Court of the United States, which was accordingly done, as follows:

On the hearing of the appeals questions or propositions of law arose concerning which this court desires the instruction of the Supreme Court for their proper decision.

### Statement of Facts.

The facts upon which the questions arise are these:

On July 30, 1904, the Norwegian steamship Jason while bound on a voyage from Cienfuegos, Cuba, to New York, with general cargo, including 12,000 bags of sugar, consigned to Arbuckle Bros., and insured with the Insurance Company of North America, stranded off the south coast of Cuba, through the negligence of her navigators. The steamship was seaworthy and was properly manned, equipped and supplied.

The vessel was relieved from the strand on August 9 as the result of sacrifices by jettison of 2,042 bags of sugar (1,657 bags being the property of Arbuckle Bros.), of sacrifices and extraordinary expenditures voluntarily made or incurred by the shipowner through the master, and of the services of salvors specially employed. Said sacrifices and expenditures were necessary to relieve ship, cargo and freight from common peril. She then completed her voyage, and made delivery of the remainder of her cargo to the several consignees at New York on their executing an average bond for the payment of losses and expenses which should appear to be due from them, provided they were stated and apportioned by the adjusters "in accordance with established usages and laws in similar cases."

The bills of lading for all of the Jason's cargo contained the following provision:

"General average payable according to York-Antwerp Rules, and as to matters not therein provided for according to usages of port of New York.

"If the owner of the ship shall have exercised due diligence to make said ship in all respects seaworthy and properly manned, equipped and supplied, it is hereby agreed that in case of danger, damage or disaster resulting from fault or negligence of the pilot, master or crew, in the navigation or management of the ship, or from latent or other defects, or unseaworthiness of the ship, whether existing at time of shipment or at beginning of the voyage, but not discoverable by due diligence, the consignees or owners of the cargo shall not be exempted from liability for contribution in general average, or for any special charges incurred, but with the shipowner shall contribute in general average, and shall pay such special charges, as if such danger, damage or disaster had not resulted from such fault, negligence, latent or other defect or unseaworthiness."

Both parties pleaded the bills of lading as constituting the contract of carriage.

A general average adjustment was afterwards made in New York by Johnson & Higgins, adjusters appointed in the average bond. Both parties presented their claims to the adjusters for sacrifices made by them respectively for the common benefit and safety of the adventure. The adjusters allowed in the general average account the compensation of the salvors, the sacrifices of cargo, and the sacrifices and extraordinary expenditures of the shipowner, and each of the interests was credited with such amounts as had been paid by it for the common benefit.

The adjustment was prepared in accordance with York-Antwerp Rules, as provided for in the bill of lading, and otherwise in accordance with established usages and laws.

The adjustment and apportionment of general average, so made, showed a balance due from Arbuckle Bros. of $5,060.24, which the latter refused to pay. The grounds of such refusal were that the stranding resulted from the ship's negligence, and that the general average clause, above quoted, contained in the bills of lading is invalid.

The original libel was filed by the owner of the Jason against Arbuckle Bros. and its guarantor, the Insurance Company of North America, to recover this amount.

Arbuckle Bros. and the Insurance Company of North America filed a cross-libel to recover the sum of $3,506.50, which they alleged would be due them on an adjustment of the general average losses, if the shipowner's losses and sacrifices were excluded from the general average account by reason of the fact that the stranding was caused by negligence of the ship's navigators. They claimed that the shipowner's sacrifices and extraordinary expenditures, made for the common benefit and safety of the adventure after the stranding, should not be allowed in the adjustment. If said sacrifices and expenditures should be excluded from the adjustment and the value of the ship should be taken account of as a contributory interest, the adjustment would show a balance in favor of Arbuckle Bros.

The District Court made a decree dismissing both libels, from which decree both parties duly appealed to this court.

Upon the facts above set forth the questions of law concerning which this court desires the instruction of the Supreme Court are:

1. Whether the general average agreement above quoted from the bills of lading is valid, and entitles the shipowner to collect a general average contribution from the cargo owners, under the circumstances above stated, in respect of sacrifices made and extraordinary expenditures incurred by it subsequent to the stranding for the common benefit and safety of ship, cargo and freight.

2. Whether, in view of the provisions of the third section of the Harter act the cargo owners, under the circumstances above stated, have a right to contribution from the shipowner for sacrifices of cargo made subsequent to the stranding, for the common benefit and safety of ship, cargo and freight.

3. Whether the cargo owners, under the circumstances above stated, can recover contribution from the shipowner in respect of general average sacrifices of cargo, without contributing to the general average sacrifices and expenditures of the shipowner made for the same purpose.

In accordance with the provisions of section 6 of the Act of March 3, 1891, c. 517, 26 Stat. 828 (U. S. Comp. St. 1901, p. 550), establishing Courts of Appeals, the foregoing questions of law are by the Circuit Court of Appeals of the United States for the Second Circuit, hereby certified to the Supreme Court.

E. HENRY LACOMBE, Circuit Judge.
ALFRED C. COXE, Circuit Judge.
H. G. WARD, Circuit Judge.